UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.J.B.B., | Case No. 5:26-cv-01918-DMK |
| Petitioner, | |
| v. | MEMORANDUM AND ORDER |
| JAIME RIOS, et al., | |
| Respondents. | |

On April 17, 2026, Petitioner M.J.B.B.[1] filed a petition for writ of habeas corpus by a person in federal custody pursuant to 28 U.S.C. § 2241. ECF 1. Petitioner is a noncitizen who is in immigration detention in Adelanto, California. *Id.* at ¶¶ 1, 5.

I.   **FACTUAL BACKGROUND**

The petition alleges the following facts, which Respondents have not disputed. Petitioner is a 30-year old gay woman from an indigenous tribe in Colombia. *Id.* at ¶ 1. After being subjected to years of horrific abuse due to her gender and sexual orientation, including repeated assaults and death threats, Petitioner fled Colombia and arrived in the

---

[1] The Court redacts Petitioner's name to mitigate privacy concerns, as requested by Petitioner and suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. See Memorandum Re: Privacy Concern Regarding Social Security & Immigration Opinions (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

United States in September 2023. *Id.* at ¶¶ 18–25. Petitioner was removed to Colombia that same month after failing the credible fear interview. *Id.* at ¶ 26. Just two months later, Petitioner returned to the United States following death threats against her. *Id.* at ¶ 27. Petitioner ultimately passed her reasonable fear interview and was placed in withholding-only proceedings. *Id.* On March 4, 2024, Petitioner was released under an order of supervision, subject to ankle monitoring, regular check-ins, and enrollment in Intensive Supervision Appearance Program (ISAP) supervision[2]. *Id.*; ECF 1-2 at ¶ 49. Shortly thereafter, Petitioner filed an Application for Asylum and Withholding of Removal. ECF 1 at ¶ 30.

Over time, ISAP monitored Petitioner through increasingly less restrictive means, first replacing her ankle monitor with a smart watch, and then reducing monitoring to a smartphone application. *Id.* at ¶ 31. Since Petitioner's release in March 2024, she has complied with all conditions of the order of supervision, including checking in with Immigration and Customs Enforcement and ISAP as required. *Id.* Despite Petitioner's record of compliance, however, ISAP informed Petitioner in November 2025 that an ankle monitor would be reimposed, but did not provide a reason. *Id.* at ¶ 32. On December 8, 2025, Petitioner reported for a required check-in at the ICE San Francisco Field Office, expecting to address the ankle monitor issue. *Id.* Instead, Petitioner was informed that ICE would be detaining her

---

[2] The Court notes a discrepancy between the Petition (ECF 1) and Petitioner's Declaration (ECF 1-2). The Petition states Petitioner "was placed on a monitoring program through the Intensive Supervision Appearance Program ("ISAP")" *after* relocating to California in summer 2024. ECF 1 ¶ 31. Meanwhile, Petitioner's Declaration states she was "released under ISAP with ankle monitor and regular check-ins" in March 2024. ECF 1-2 ¶ 49.

because her next immigration court hearing was not scheduled until 2027. *Id.* at ¶ 33.

While in transit to Adelanto Detention Facility that same day, an ICE officer handed Petitioner a Notice of Revocation of Release, dated December 8, 2025, which stated that there were changed circumstances in her case, and further alleged that Petitioner had violated the terms of release. *See* ECF 1-4. Because the notice was written in English, Petitioner could not read or understand it, and the Spanish-speaking ICE officer who provided the notice refused to explain its contents to her. ECF 1 at ¶ 35. It does not appear that Petitioner was afforded a hearing prior to her re-detention. *Id.* at ¶¶ 32–35.

On February 11, 2026, Petitioner appeared before an immigration judge. *Id.* at ¶ 37. Relying on allegedly erroneous legal advice regarding her prior removal order and voluntary removal, Petitioner withdrew her asylum application, and the immigration judge reinstated the prior order of removal. *Id.* at ¶¶ 36–37. On April 9, 2026, Petitioner then requested a second reasonable fear interview, which appears to be pending. *Id.* at ¶ 41; ECF 1-6.

## II.    SUMMARY OF PETITIONER'S CLAIMS

The petition alleges (1) violation of Petitioner's right to procedural due process, insofar as Petitioner was re-arrested and detained without notice or a hearing; (2) violation of Petitioner's right to substantive due process, insofar as her detention is punitive and unjustified; and (3) violation of the Immigration and Nationality Act and applicable regulations, insofar as Petitioner did not receive notice or an individualized determination of danger and flight risk. ECF 1. Petitioner therefore seeks relief in the form of, *inter alia*, (1) a writ of habeas corpus directing Respondents to release Petitioner from custody

3

immediately; (2) an injunction preventing Respondents from re-detaining Plaintiff unless and until a hearing can be held before an impartial immigration judge; and (3) an award of costs and reasonable attorney fees.   ECF 1 at 21.

## III.   <u>LEGAL STANDARD</u>

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  *See* U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  *See, e.g., Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  *See, e.g., Regino v. Staley*, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine

whether detention violates procedural due process, courts frequently apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the *Mathews* test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under *Mathews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *see also id.* at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." *Regino*, 133 F.4th at 959–60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the

asserted fundamental liberty interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." *Khachatryan v. Blinken*, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## IV.   ANALYSIS

Here, it is undisputed that Petitioner entered the United States in November of 2023, presented herself to immigration officials, and passed a reasonable fear interview.  ECF 1 at ¶ 27.  It is further undisputed that shortly after her arrival, Petitioner was released from physical custody, and thereafter submitted an application for asylum.[3] *Id.* at ¶ 30.  It is also undisputed that Petitioner has demonstrated full and consistent compliance with all conditions of her release.  *Id.* at ¶¶ 31–33.

Based on these facts, the Court concludes that once Petitioner was released from custody on conditions, she acquired "a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like

---

[3] The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that he was likely to appear for any future proceeding.  *See Fernandez Lopez v. Wofford*, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." *Pinchi*, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest in remaining out of custody is strengthened by the time she has spent out of custody, building a life for herself in the United States. *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

Respondents do not dispute that Petitioner was detained without notice or a pre-deprivation hearing. As such, the Court concludes that Petitioner's detention by ICE on December 8, 2025, without notice or a pre-deprivation hearing, violated her procedural due process rights. *See, e.g., Mourey v. Bowen*, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in *Mathews*, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); *Fernandez Lopez v. Wofford*, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); *Maldonado Vazquez v. Feeley*, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been

ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Further, given this violation of Petitioner's due process rights, the Court concludes that "Petitioner's release is necessary to return [Petitioner] to the status quo." *Nazarian v. Noem*, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). Thus, the status quo here would be Petitioner's prior release on conditions prior to the current re-detention. *See Nazarian*, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." *Id.*; *see Esmail v. Noem*, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

The Court also concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. *See, e.g., Ixchop Perez v. McAleenan*, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. *Perez v. McAleenan*, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the

8

burden of proving that such detention is justified." (internal quotation marks omitted)).  Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  *See, e.g., Mourey*, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); *Carballo v. Andrews*, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

The Court notes that Respondents have stated that they "are not presenting an opposition argument at this time."[4]   *See* ECF 8.  Accordingly, Respondents have consented to the relief requested by Petitioner.  *See* C.D. Cal. L.R. 7-12.

---

[4] "In our adversarial system of adjudication, we follow the principle of party presentation" meaning that "in both civil and criminal cases, in the first instance and on appeal . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (citation modified).  Further, "as a general rule, our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Id.* at 375–76 (citation modified).  In our adversarial system, the judge does not act as inquisitor, conducting the "legal investigation himself." *McNeil v. Wisconsin*, 501 U.S. 171, 181 n.2 (1991).

## V.  <u>CONCLUSION</u>

Based on the foregoing, the Court grants the Petition as follows:

(1) Respondents must release Petitioner from custody immediately on Petitioner's prior conditions of release;

(2) Respondents must return any property and paperwork seized from Petitioner in the course of her arrest and detention;

(3) Respondents shall not re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation hearing before an Immigration Judge, at which the government bears the burden of proving by clear and convincing evidence that she is a danger to the community or a flight risk, and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community; and

(4) Respondents shall file a notice of compliance no later than **May 15, 2026**, regarding their compliance with this Order.

DATED: May 8, 2026

_____
HONORABLE DIANA M. KWOK
UNITED STATES MAGISTRATE JUDGE

10